**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

BEE FAST, Corp., a Delaware corporation,

*Plaintiff*,

v.

F40, LLC, a Puerto Rican limited liability company,

*Defendant*.

_____/

**JURY TRIAL DEMANDED**
Case No.: 3:22-cv-1290

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**
**AND DEMAND FOR JURY TRIAL**

Plaintiff, BEE FAST, CORP. ("Plaintiff" or "Bee Fast"), by and through undersigned counsel hereby sues Defendant F40, LLC ("Defendant" or "F40") and states as follows:

**JURISDICTION, VENUE, AND PARTIES**

1. This is an action seeking injunctive relief and legal redress for delivery of a 2022 Ferrari SF90 Spider Plaintiff paid Defendant $880,000.00 USD pursuant to a contract and Defendant failed to deliver and unilaterally attempted to rescind the contract. This action further seeks equitable relief and damages in excess of seventy-five thousand dollars ($75,000.00) exclusive of interest, costs, and attorney's fees

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are related to the federal claims and form part of the same case and controversy, transaction or occurrence.

3. Plaintiff, Bee Fast is a Delaware corporation with its principal place of business in Delaware.

1

4. Defendant F40 is a Puerto Rican limited liability company with its principal place of business in San Juan, Puerto Rico.

5. Defendant F40 is subject to the personal jurisdiction of this Court as the controversy, transaction or occurrence occurred in Puerto Rico.

6. Venue is proper in this District as a substantial part of the events or omissions giving rise to the claim occurred within the District's boundaries.

7. Venue is proper under 28 U.S.C. § 1391 in this District because Defendant's principal place of business is in this District.

8. Plaintiff has retained the undersigned counsel and is obligated to pay attorney's fees arising from this action.

9. All conditions precedent have occurred, have been performed, or have been waived.

## GENERAL ALLEGATIONS

10. Defendant is a Ferrari dealership in Puerto Rico who is in the business of selling one of a kind Ferrari vehicles on a daily basis.

11. Defendant is the parent company of JPFG Ferrari, LLC.

12. Plaintiff was originally Bee Fast, LLC but was converted into a corporation in Delaware.

13. On or around May 2022, Defendant approved Plaintiff to customize a brand new Ferrari vehicle and Plaintiff was to arrive some time thereafter for a customization appointment. A week after receiving notice thereof, Defendant began avoiding Plaintiff and later advised Plaintiff that his allocation was sold to someone else.

14. Thereafter Defendant invited Plaintiff to stop by Ferrari because they had a seller of a yellow 2022 Ferrari SF90 Spider with Vin ZFF96NMA6N027 (the "Vehicle") that arrived on May 10, 2022 and asked if Plaintiff would like to purchase the Vehicle.

15. At this point, there was only one 2022 Ferrari SF90 Spider with these specifications in America and Plaintiff agreed to purchase the Vehicle.

16. Plaintiff advised Defendant the Vehicle would have to be transferred to North Carolina upon purchase. Defendant agreed and helped Plaintiff with the logistics on how to get the Vehicle to North Carolina even before any purchase was made.

17. Plaintiff agreed to purchase the Vehicle and asked for copies of the Vehicle sticker with the specifications of the parts to confirm breakdown of the price and for copies of the title of the Vehicle.

18. On or about May 2022, Plaintiff executed a Purchase and Sale Agreement for the Vehicle with Defendant, a certified dealership located at John F. Kennedy Avenue, CII, CII John Alberto Ernot, San Juan, 00920, Puerto Rico (the "Agreement"). *See* Exhibit "A".

19. The Agreement states, as translated:

> The buyer guarantees that the used car delivered in exchange is free of liens or conditional sales contract. It is understood that all installment purchases are through a conditional sale or lease agreement and all the conditions of the business are in writing and they are in order. Attached to this order you have received the DACO warranty manual.

*See* Exhibit "A".

20. The salesperson at Defendant dealership would not send the sticker or title of the Vehicle and repeatedly requested Plaintiff to make payment pursuant to the Agreement.

21. On June 8, 2022, Plaintiff paid Defendant eight hundred eighty dollars and zero cents ($880,000.00) pursuant to the Agreement for the purchase of the Vehicle. *See* Exhibit "B".

3

22. Plaintiff provided all documentation and information Defendant required to effectuate the Agreement and acquire the Vehicle.

23. Despite having received payment, Defendant continuously failed to deliver the Vehicle to Plaintiff.

24. On June 9, 2022, Plaintiff's counsel sent an email to Defendant's representative requesting the title and window sticker for the Vehicle purchased. *See* Exhibit "C".

25. On June 9, 2022, Defendant's sales manager emailed Plaintiff that it was going to refund the purchase price of the vehicle. *See* Exhibit "D". Plaintiff advised it did not want a refund and wanted delivery of the Vehicle. *Id.*

26. On June 10, 2022 at 8:25 AM, Defendant's sales manager advised Plaintiff that it was proceeding to deliver the Vehicle to Dorado, Puerto Rico and would send to Plaintiff upon receipt of the title, license, and window sticker. Plaintiff agreed. *Id.*

27. On June 10, 2022 at 1:39 PM, Defendant unilaterally cancelled the Agreement and wired Plaintiff the purchase price of the Vehicle minus $5.00 wire transfer fee. *See* Exhibit "E".

28. The wire transfer was not actually sent to the Plaintiff until June 13, 2022.

29. Despite all of Plaintiff's efforts, Defendant now refuses to move forward with the sale.

30. Instead, Defendant took Plaintiff's $880,000.00 Vehicle payment as an interest free loan to purchase the Vehicle from a previous owner, held Plaintiff's payment, and then realized that it could sell the Vehicle for more than the Agreement purchase price to another buyer, and thus in bad faith and fraudulent action alleged repudiation, returned Plaintiff's payment, and attempted to cancel the Agreement.

31. Defendant also made a $50,000.0 profit from selling the Vehicle to Plaintiff.

32. Defendant's practice to take Plaintiff's money and failure to deliver the Vehicle Plaintiff rightfully contracted and paid for was fraudulent and done in a way to use Plaintiff as a prong for the purchase of the Vehicle into the dealership.

33. On information and belief, the previous owner would not have sold the Vehicle to Defendant dealership had Plaintiff not been involved in the negotiations.

34. Not only did Defendant use Plaintiff's $880,000.00 payment as an interest free loan to purchase the Vehicle from previous owner and make a $50,000.00 profit from the sale, it now is refusing to deliver a one of a kind Vehicle that has exponentially gone up in value.

35. Defendant's now attempt to make excuses for not delivering the Vehicle to Plaintiff pursuant to the Agreement including that Plaintiff allegedly repudiated the Agreement and that Defendant was not aware the Vehicle would be transferred to North Carolina. These allegations are false as up to the very day the wire transfer was returned, Plaintiff and Defendant were having conversations about delivery of the Vehicle and Defendant worked out the logistics of delivering the Vehicle to North Carolina before Plaintiff even sent the purchase price of the Vehicle.

## COUNT I
## SPECIFIC PERFORMANCE

36. Plaintiff re-alleges, incorporates and asserts by reference the allegations set forth in paragraphs 1–35.

37. This is an action for specific performance against Defendant.

38. Plaintiff and Defendant entered into the Agreement, which is a valid, binding, and enforceable contract.

39. The Agreement clearly and unambiguously requires that Defendant sell the Vehicle to Plaintiff upon payment of the purchase price of $880,000.00.

40. The Agreement requires that Defendant deliver the Vehicle to Plaintiff.

5

41. The Agreement clearly and unambiguously states that Plaintiff made the purchase price of $880,000.00 to Defendant.

42. The Vehicle subject to the Agreement is unique and valuable.

43. However, contrary to the express terms of the Agreement, Defendant failed to honor its obligations under the Agreement by not delivering the Vehicle to Plaintiff upon payment and allow the Vehicle to sit at the dealership despite multiple requests from Plaintiff to deliver the Vehicle and multiple false allegations from Defendant that the Vehicle would be delivered.

44. Defendant never delivered the Vehicle to Plaintiff and instead attempted to repudiate the Agreement by returning Plaintiff's purchase price.

45. Plaintiff remains ready, willing, and able to perform under the terms of the Agreement and to complete the purchase of the Vehicle. In fact, Plaintiff performed all its duties under the Agreement prior to Defendant's return of the purchase price and Defendant was required to perform under the Agreement and deliver the Vehicle to Plaintiff.

46. Defendant has refused to perform its obligation under the Agreement by refusing to deliver the Vehicle.

47. No adequate remedy at law exists because the Vehicle is a one of a kind, rare and valuable Vehicle and, on information and belief, is the only one in America with these specifications.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court requires that Defendant perform its obligations owed under the Agreement, accept Plaintiff's $880,000.00 payment for the Vehicle, and deliver the Vehicle to Plaintiff, and award Plaintiff such other relief as this Court deems just and proper.

## COUNT II
## PERMANENT INJUNCTION

48. Plaintiff re-alleges, incorporates and asserts by reference the allegations set forth in paragraphs 1–35.

49. This is an action for permanent injunctive relief against Defendant for its failure to honor the Agreement with Plaintiff and refusing to deliver the Vehicle to Plaintiff.

50. Plaintiff fully performed its obligations under the Agreement and made full payment of $880,000.00 for the Vehicle.

51. Defendant's failure to deliver the title, sticker, and ultimately the Vehicle to Plaintiff is directly contrary to the clear and unambiguous Agreement between the Parties.

52. Plaintiff seeks an injunction to stop Defendant from selling the Vehicle to any third party and require that Defendant honor its Agreement, accept Plaintiff's $880,000.00 purchase price and deliver the Vehicle to Plaintiff.

53. If Defendant sells the Vehicle to another party and refuses to comply with the Agreement, Plaintiff will suffer irreparable harm for which it will have no adequate remedy at law. Specifically, Plaintiff will suffer irreparable harm because the Vehicle is unique and valuable and the only one in America with these specifications. There is no replacement for the Vehicle. Whereas, should Defendant be restrained from selling the Vehicle, Defendant would still have the Vehicle and the ability to sell the Vehicle to either Plaintiff or any third party, therefore not suffering any loss or damage.

54. The public interest would not be disserved by a permanent injunction as the public has an interest in the protection and enforcement of contractual rights, such as Plaintiff's.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court require Defendant to refrain from selling the Vehicle to any third party and require that Defendant honor

its Agreement, accept Plaintiff's $880,000.00 purchase price and deliver the Vehicle to Plaintiff, and any further relief this Court deems just and proper.

## COUNT III
## FRAUD

55. Plaintiff re-alleges, incorporates and asserts by reference the allegations set forth in paragraphs 1–35.

56. Defendant told Plaintiff it would need to pay $880,000.00 to obtain the Vehicle.

57. Defendant's statement was false regarding a material fact, as set forth above, that it would deliver the title, sticker, and physical Vehicle to Plaintiff upon receipt of purchase price.

58. Instead, Defendant took Plaintiff's $880,000.00 Vehicle payment as an interest free loan to purchase the Vehicle from a previous owner, held Plaintiff's payment, and then realized that it could sell the Vehicle for more than the Agreement purchase price to another purchase, and thus in bad faith and fraudulent action alleged repudiation, returned Plaintiff's payment, and attempted to cancel the Agreement.

59. Defendant also made a $50,000.0 profit from selling the Vehicle to Plaintiff.

60. Defendant's practice to take Plaintiff's money and failure to deliver the Vehicle Plaintiff rightfully contracted and paid for was fraudulent and done in a way to use Plaintiff as a prong for the purchase of the Vehicle into the dealership.

61. On information and belief, the previous owner would not have sold the Vehicle to Defendant dealership had Plaintiff not been involved in the negotiations.

62. Not only did Defendant use Plaintiff's $880,000.00 as an interest free loan to purchase the Vehicle from previous owner and make a $50,000.00 profit from the sale, it now is refusing to deliver a one of a kind Vehicle that has exponentially gone up in value.

63. Defendant abused the relationship with Plaintiff and took unconscionable advantage of the Plaintiff by using its purchase price of the Vehicle to purchase the Vehicle for itself and failing to deliver the Vehicle to Plaintiff thereafter.

64. Defendant knew or should have known its representations were false and were intended to induce Plaintiff to give Defendant the $880,000.00 so Defendant could purchase the Vehicle from a third party.

65. Plaintiff has thus suffered damages in justifiable reliance on the Defendant's representations.

**WHEREFORE**, Plaintiff requests this Honorable Court enter an order awarding it actual and compensatory damages, delivery of the Vehicle, and any further relief this Court deems just and proper.

## COUNT IV
### UNJUST ENRICHMENT (*Made in the Alternative*)

66. Plaintiff re-alleges, incorporates and asserts by reference the allegations set forth in paragraphs 1–35.

67. Plaintiff conferred a benefit on Defendant, who had knowledge thereof. Plaintiff paid Defendant $880,000.00, which Defendant used to purchase the Vehicle from a third party.

68. Defendant voluntarily accepted and retained the benefit conferred and kept the Vehicle rather than deliver it to Plaintiff.

69. The circumstances render the Defendant's retention of the benefit inequitable unless the Defendant pays to the Plaintiff the value of the benefit.

**WHEREFORE**, the Plaintiff requests this Honorable Court enter judgment in favor of the Plaintiff and any furth relief this Court deems just and proper.

**DEMAND FOR JURY TRIAL AND RESERVATION OF RIGHTS**

Plaintiff hereby demands for a trial by jury on all issues so triable. Plaintiff further reserves all right to seek punitive damages and join additional parties or entities should discovery show further parties involved.

Dated: June 17, 2022

Respectfully submitted,

SMOUSE & MASON, LLC

 /s/ Roy L. Mason_____
Roy L. Mason (308164)
250 Munoz Rivera Avenue, Suite 1120
San Juan, PR 00918
(t): (410) 269-6620
(f): (410) 269-1235
rlm@smouseandmason.com

**VERIFICATION**

I, Ricky Patel, declare as follows:

1. I am an officer of the Plaintiff BEE FAST, CORP. in the present case. Bee Fast is incorporated and has its principal place of business in Delaware.

2. I have personal knowledge of the facts set forth in the Complaint and that the allegations therein are true and correct to the best of my knowledge, information, and belief, and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint are true and correct.

Executed on June 17, 2022.

/s/*Ricky Patel*_____
Ricky Patel
Officer, BEE FAST, CORP.